ACCEPTED
06-14-00110-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/22/2015 2:30:25 PM
DEBBIE AUTREY
CLERK

## No. 06-14-00110-CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

12/22/2015 2:30:25 PM

DEBBIE AUTREY
Clerk

IN THE

SIXTH COURT OF APPEALS

AT TEXARKANA, TEXAS

_____

**CODY LANG THOMAS,**

*Appellant*

**v.**

**THE STATE OF TEXAS,**

*Appellee*

_____

APPEAL FROM
THE 8TH DISTRICT COURT OF HOPKINS COUNTY, TEXAS
TRIAL COURT NO. 1423904

_____

**APPELLEE'S MOTION FOR REHEARING**

_____

Will W. Ramsay
110 Main Street
Sulphur Springs, TX  75482
903.885.0641, f. 903.885.0640
wramsay@hopkinscountytx.com

Attorney for Appellee
State of Texas

ORAL ARGUMENT REQUESTED IF NECESSARY

**Appellee's Motion for Rehearing**

Pursuant to Texas Rule of Appellate Procedure 38(a), the following is a list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

**Appellant**
CODY LANG THOMAS

**Appellant's appellate counsel**
Martin Braddy
121 Oak Avenue, Suite A
Sulphur Springs, Texas 75482
903.885.2040 telephone
500.885.2704 facsimile

**Appellant's trial counsel**
Wade Forsman
Post Office Box 918
Sulphur Springs, TX 75482
903.243.1775 telephone
wade@forsmanlaw.com

**Appellee**
The State of Texas

**Appellee's trial & appellate counsel**
Will Ramsay
8TH Judicial District Attorney
110 Main Street
Sulphur Springs, TX 75482
903.885.0641 telephone
903.885.0640 facsimile
wramsay@hopkinscountytx.com

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS as Appellee, who files this Motion for Rehearing, and respectfully asks this Court to reform its opinion of November 20, 2015 by setting aside the judgment in this case and remand the case to the trial court for a new trial in its entirety as opposed to a new punishment hearing. In support thereof, Appellant shows as follows:

**I.**

1. This case was originally indicted as the 3rd degree felony offense of Engaging in Organized Criminal Activity. (C.R. pg. 4) The underlying felony offense was a State Jail Theft. *See Id.* As seen throughout the entirety of the record, both the defense and the State (erroneously) believed this case (as charged) could ultimately be punished under the Habitual Felon Statute resulting in a punishment range of 25 years to 99 years or Life in prison. (*See* R.R. Vol. 2 pg. 7; *See* RR. Vol. 3 pg. 5*) In exchange for the defendant's plea of guilty*, the State agreed to drop the enhancement of "engaging in organized criminal activity" and move forward on the enhanced State Jail Theft (which we now know was improperly enhanced). (R.R. Vol. 3 pg. 6)

2. The defendant believed that he was ultimately looking at a punishment range of 25 to life. The State agreed to reduce the charge wherein the range of punishment would be capped at 20 years. Both the State and the defendant entered

into this agreement erroneously and without a full understanding of the outcome of their decision. It is very possible, knowing that his only exposure was 20 years in prison, that the defendant would not have pled guilty to this offense. A maximum of life in prison and the maximum of 20 years in prison are quite different.

3. On the other hand, the State very likely would not have entered into this agreement knowing they would be limited to punishment at 2 years in the State Jail. As already stated, the original charge was a 3rd Degree Felony. The defendant had one non-state jail felony conviction that would have absolutely enhanced the punishment range from 10 years confinement to a maximum of 20 years confinement.

4. As embarrassing as it is to admit, *nobody* involved in this plea process was aware of the proper range of punishment. The defendant thought he had dodged a bullet by pleading to a lesser punishment range. The prosecutor thought that he had secured a guilty plea while remaining in an appropriate punishment range (2-20 years) that he would satisfy the victim. Finally, the judge approved the plea agreement and admonished the defendant on the punishment range that *everyone* was misunderstanding.

5. While the record is abundantly clear that this was not a plea agreement entered into knowingly and intelligently by the parties, the defendant suffered no harm by the mishandling. (Unless, of course, he would not have pled guilty at all

if he would have known the punishment was capped at 20 years!)  The defendant has spent almost two years in prison, which would be the maximum sentence for a State Jail offense.  As it stands now, he looks to walk out of jail in a much better position than he ever dreamed.

6.      There could be an in-depth discussion of whether the defendant's plea was knowing and voluntary under *Boykin v. Alabama*. 395 U.S. 238 (1969).  The State would contend that an entire record showing that the parties were entering into an agreement where everyone was mistaken, is *prima facie* evidence that due process was violated.  Even under that analysis, we would then be looking to see whether the error was harmful.  While not necessarily harmful to the defendant, the outcome after appeal is extremely harmful to the *plea agreement* between the parties.

7.      If a defendant successfully challenges a conviction obtained through a negotiated plea of guilty, the proper remedy is specific performance of the plea agreement, if possible.  *Shannon v. State,* 708 S.W.2d 850, 852 (Tex.Crim.App.1986).

8.      This case is different than many appeals.  The issue is not that a party did not get a desired outcome.  It is no surprise that the defendant will appeal after receiving the maximum sentence.  But, until the appeals process, *nobody* thought what the defendant received was *outside* of the range of punishment.  This is

because the <u>crux</u> of the original plea agreement dealt with removing the EOCA language in the indictment and capping the punishment at 20 years in the penitentiary. The Defendant readily admitted and pled true to the two enhancement paragraphs in order to obtain this benefit. The understanding of the parties was clear from the record: there could be a sentence of two years or a sentence of 20 years in the penitentiary. <u>Punishment in the State Jail was never envisioned when entering into this plea agreement.</u>

8.     The Court of Criminal Appeals has looked at this issue a number of times. In *Ex Parte Aaron Allen Adkins*, there was an agreement between the parties that a deadly weapon finding would be part of the judgment. *See* 767 S.W.2d 809, 810 (Tex. 1989). While the Court agreed that there was no evidence to support a deadly weapon finding, they also opined that "the result of deleting the finding without disturbing the remainder of the bargain would be to adjust the tenor of the 'mutual obligation' entered into by the parties" and it would "create a new bargain not contemplated by the parties or the trial court when it accepted the plea agreement and entered its judgment accordingly." *Id.* at 811. Therefore, the Court held that "specific performance of the agreement, without an essential portion of the essence of the agreement….is an unacceptable remedy." *Id.* The Court then set the plea bargain aside in order to "place the parties once again on equal grounds

in relation to their bargaining positions which led to the initial plea agreement."

*Id.*

9.      Also, in *Ex Parte Billy Ross Sims*, the Court of Criminal Appeals addressed a similar issue.  868 S.W.2d 803 (Tex.Crim.App. 1993) *overruled on other grounds Ex Parte McJunkins,* (Tex.Crim.App. 1997).  There, the parties had an agreement that the cases being pleaded would run consecutively.  *See id.*  The Court later reversed this position, but, at that time, held that the parties could not agree to such an action.  After deciding that the consecutive sentences were improper, the Court had to determine the relief.  The Court ultimately decided that the parties "agreed, although erroneously, that the imposition of consecutive sentences was an available option."  *Id.* at 805.  The Court also decided this was an important part of the plea agreement.  *See id.*  "If this Court were to simply delete the cumulation order only the State would be bound detrimentally to this aspect of the agreement.  This is neither logical nor fair.  Specific performance of the bargained-for [agreement] cannot be obtained.  The parties must be returned to their positions prior to the plea of guilty."  *Id.*

10.     Probably the largest contributing factor to entering into the plea agreement in the case before this Court is the abandonment of the EOCA language and proceeding as an enhanced second degree.  This was pivotal to both the defendant and the State.  There was no agreement to move forward on a mere State Jail

Felony. To move forward as a State Jail felony would be to detrimentally bound the State to what was never envisioned by the parties.

## CONCLUSION

The November 20th opinion by this Court is well reasoned on the issue of proper enhancement. However, remanding this case for a punishment hearing within a range never contemplated by the parties would be a miscarriage of justice.

## PRAYER

WHEREFORE, premises considered, Appellee, State of Texas, respectfully requests this Court to grant his Motion for Rehearing, issue a new opinion setting aside the judgment of the trial court, remanding this case for a new trial on the merits, and for any further relief the Appellee may be entitled.

Respectfully submitted,

By: ___//s// Will Ramsay_____
Will Ramsay
8th Judicial District Attorney
State Bar #24039129
110 Main Street
Sulphur Springs, TX 75482
903.885.0641, f. 903.885.0640
willramsay@hopkinscountytx.com

Attorney for Appellee
State of Texas

## CERTIFICATE OF WORD COUNT

Pursuant to Tex. R. App. P. 9.4(i)(3), this document contains **1,593** words.

_/s/ Will Ramsay_
**Will Ramsay**

## CERTIFICATE OF SERVICE

This is to certify that on **December 22, 2015**, I served a true and correct copy of the above and foregoing *Appellant's Brief* by email on Martin Braddy, Attorney for Appellant.

_/s/ Will Ramsay_
**Will Ramsay**